IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LONNIE REED                                                                                           PETITIONER
ADC #132641

v.                                         4:22-cv-00816-DPM-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction                                                         RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge D.P. Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

### DISPOSITION

I.   BACKGROUND

Lonnie Reed ("Petitioner"), an inmate at the Arkansas Division of Correction's East Arkansas Regional Unit, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 9.)  Mr. Reed was convicted by a jury in the Circuit Court of Pulaski County, Arkansas, of two counts of aggravated robbery and one count of theft of property.  (Doc. No. 10-2 at 6-9.)  He was sentenced to a total of fifty-five years imprisonment, receiving twenty-five years on each count of aggravated robbery and five years on the theft of property count.  (*Id*.)

The Arkansas Court of Appeals recited the facts of the underlying case as follows:

> In 2016, the State of Arkansas charged Reed with several crimes related to an armed robbery of Express RX Pharmacy, which is located near the intersection of Mississippi Street and Cantrell Road in Little Rock. Around 6:52 p.m. on 6 July 2016, a white male who was approximately 5'8" tall and wearing a black bandana across the bridge of his nose entered the pharmacy, pulled out a gun, and demanded all the Dilaudid and Oxycodone the pharmacist had. The pharmacist put the bottles of Dilaudid and Oxycodone in a green plastic basket on the pharmacy counter. The gunman picked up the basket, walked toward the exit of the store, dumped the contents of the basket into the front of his shirt, and "threw the green basket in the floor right inside the building before he left." A partial latent fingerprint recovered from the green basket was recovered at the crime scene, and it matched a print of Lonnie Reed's right middle finger. Surveillance video captured the events.
>
> During his jury trial, Reed presented an alibi defense: he was buying tires at Tire Market, on 16717 MacArthur Drive, in North Little Rock when the robbery occurred. Tire Market owner Jerry Ford testified that he sold Reed $376.90 in new tires on 6 July 2016 (the day of the robbery). According to Ford, his typical business hours are 8:00 a.m. to 5:00 p.m., but he had stayed open late, and Reed "was in the process of leaving" the tire store around 6:40 p.m. When defense counsel stated, "So he [Reed] was leaving your shop at 6:40[?]" Ford replied, "Yes." As evidence, Reed presented Ford's handwritten receipt containing Reed's name, address, dated "7-6-16," and time-stamped "6:40." On redirect and recross-examination, Ford said that it may have been "a little after" 6:40 p.m. when Reed left the tire shop.

*Reed v. State*, 2020 Ark. App. 49, at 1-2, 595 S.W.3d 391, at 392-393 (Ark. Ct. App. 2020).

In October of 2018, Petitioner appealed to the Arkansas Court of Appeals. (Doc. No. 10-3.) The sole issue raised on appeal concerned the trial court's failure to instruct the jury with a jury instruction proffered by the defense. (*Id*. at 8.) At trial, Mr. Reed asked the court to instruct the jury to accept as conclusive that the typical route from the tire store to the pharmacy was "12½ miles long and takes 14-18 minutes." (Doc. No. 10-1 at 281.) Over defense counsel's objection, the final jury instruction included the distance between the tire store and pharmacy, but excluded the time it took to travel that distance. (*Id*. at 305.) The Arkansas Court of Appeals affirmed, holding that "the circuit court did not abuse its discretion when it rejected Reed's proffered jury instruction." *Reed*, 2020 Ark. App. at 7.

2

On March 26, 2020, Petitioner filed a *pro se* petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. (Doc. No. 10-2 at 11-29.) He alleged ineffective assistance of counsel at trial, ineffective assistance of counsel on appeal, prosecutorial misconduct, and insufficient evidence to sustain the conviction. (*Id*. at 15-24.) On November 13, 2020, the Pulaski County Circuit Court denied his Rule 37 petition. (*Id*. at 68.)

On December 03, 2020, Mr. Reed appealed the denial of Rule 37 relief, arguing no evidence supported his conviction and appellate counsel was ineffective due to his failure to raise the sufficiency of the evidence on direct appeal. (Doc. No. 10-10.) On October 6, 2020, the Arkansas Court of Appeals affirmed, holding Mr. Reed "failed to show how his appellate counsel's failure to raise a sufficiency claim has prejudiced him under *Strickland*." *Reed v. State*, 2021 Ark. App. 371, at 8, 2021 WL 4572169, at *4 (Ark. Ct. App. 2021). Petitioner appealed the Arkansas Court of Appeals' decision, and the Supreme Court of Arkansas denied his *pro se* petition for review on March 31, 2022. (Doc. No. 10-14.)

## II.  ANALYSIS

Mr. Reed advances two main arguments in his Petition. (Doc. No. 9.) First, he contends "the State presented constitutionally insufficient proof that [he] was the perpetrator of the crimes for which he was convicted." (*Id*. at 13.) Second, he argues that he was denied the right to effective assistance of counsel when his appellate attorney failed to raise a sufficiency of the evidence argument on direct appeal. (*Id*. at 5.) Each argument is addressed in turn.

### a. Sufficiency of the Evidence

Mr. Reed argues that the "State presented constitutionally insufficient proof that [he] was the perpetrator of the crimes for which he was convicted." (Doc. No. 9 at 13.) This sufficiency of the evidence claim is procedurally defaulted.

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")). The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981).

In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." *Murphy*, 652 F.3d at 849. Mr. Reed did not do so here. On appeal, the sole argument raised was that the trial court abused its discretion in failing to instruct the jury with an instruction proffered by the defense, thereby violating Arkansas Rule of Evidence 201. (Doc. 10-3 at 10.) The appeal was void of any sufficiency of the evidence claim. Because Mr. Reed has failed to comply with the fair-presentment requirement, his claim is procedurally defaulted.

When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and

4

actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

As for the cause-and-prejudice exception, a showing of "some objective factor external to the defense" that impeded development of the claim in state court is required. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Mr. Reed does not identify any such impediment. As discussed above, Mr. Reed clearly blames his appellate counsel for limiting the claim to Arkansas Rule of Evidence 201 (Doc. No. 9 at 5), but this factor is not one external to the defense.

As for the miscarriage-of-justice exception, Mr. Reed's sufficiency of the evidence claim is essentially an allegation of actual innocence. (Doc. No. 9 at 13.) The threshold of an actual-innocence gateway claim is very high, requiring a petitioner to establish: (1) new and reliable evidence that was not presented at trial, and (2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him. *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997). Because Mr. Reed does not point to any new evidence, he does not begin to cross the very high threshold of an actual-innocence gateway claim. For this reason, Mr. Reed's claim is inexcusably procedurally defaulted, and federal habeas review is barred.

### b. Ineffective Assistance of Appellate Counsel

Mr. Reed's ineffective assistance of appellate counsel argument is twofold. First, he contends that the "Arkansas Court of Appeals' decision on [his] ineffective-assistance-of-appellate-counsel argument in his Rule 37 proceedings involves an unreasonable application of clearly established federal law", thereby violating 28 U.S.C. § 2254(d)(1). (Doc. No. 9 at 11-12.) Second, he argues the Arkansas Court of Appeals' decision was based upon "an unreasonable

determination of the facts under 28 U.S.C. § 2254(d)(2)." (*Id*.) Mr. Reed has not shown the Arkansas Court of Appeals' holding was contrary to, or involved an unreasonable application of, clearly established federal law, nor has he shown it was based on an unreasonable determination of the facts.

Under the Antiterrorism and Effective Death Penalty Act of 1996, and in the interests of finality and federalism, federal habeas courts are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Federal courts may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

      *i. Unreasonable Application of Federal Law*

Here, Mr. Reed argues that the Arkansas Court of Appeals' decision regarding his Rule 37 petition constituted an "unreasonable application of clearly established federal law" in violation of 28 U.S.C. § 2254(d)(1). Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" federal law if the state court arrives "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007).

A state court decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Mr. Reed has failed to show the Arkansas Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law.

The Arkansas Court of Appeals correctly identified the governing legal principle in ineffective assistance of appellate counsel cases as *Strickland v. Washington*, 466 U.S. 668 (1984). *Reed,* 2021 Ark. App. at 6, 2021 WL at *4. Under *Strickland*, a claim of ineffective assistance of counsel has two components: (1) that counsel's performance was deficient, resulting in errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, depriving the defendant of a fair trial. 466 U.S. at 687. The deficient-performance component requires that a defendant show counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. The prejudice component requires that a defendant establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id*. at 687.

When examining ineffective assistance of counsel cases, judicial scrutiny of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689. A court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Counsel's "strategic choices made after a thorough investigation are virtually unchallengeable" in a later habeas corpus action. *Id.*

As for ineffective assistance of appellate counsel claims, the Supreme Court of the United States defined the "hallmark of effective appellate advocacy" as the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986). In order to overcome the *Strickland* presumption that counsel's conduct falls within the wide range of reasonable professional assistance, Mr. Reed must present evidence that "appellate counsel's failure to raise a claim was [not] an exercise of 'sound appellate strategy.'" *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (quoting *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998)).

> Reasonable appellate strategy requires an attorney to limit the appeal to those issues which he determines to have the highest likelihood of success. To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal.

*Parker v. Bowersox*, 94 F.3d 458, 462 (8th Cir. 1996) (citing *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996)).

Like Mr. Reed argues in his Petition for Writ of Habeas Corpus, he argued in his Rule 37 Petition before the Arkansas Court of Appeals that appellate counsel was ineffective for failing to raise on direct appeal "the most significant, substantial and strongest" argument, the sufficiency of the evidence at trial. (Doc. No. 10-11 at 33.) Applying *Strickland* and its presumption of reasonableness, the Arkansas Court of Appeals rejected Mr. Reed's claim that his appellate attorney was ineffective, and held that Mr. Reed "failed to show how his appellate counsel's failure to raise a sufficiency claim has prejudiced him under *Strickland*." *Reed,* 2021 Ark. App. at 8, 2021 WL at *4. The state court reasoned that "because substantial proof of guilt exists to support Reed's convictions…we cannot say with the requisite amount of certainty that appellate counsel's decision not to raise an insufficient-evidence argument on direct appeal prejudiced Reed." *Id.* at 8, *4.

8

In coming to that conclusion, pursuant to *Smith v. Robbins*, 528 U.S. 259 at 288[1], the Arkansas Court of Appeals considered both the jury instruction argument that appellate counsel chose to raise on direct appeal, as well as the sufficiency of the evidence argument that appellate counsel abandoned on direct appeal, the decision with which Mr. Reed disagrees. *Reed,* 2021 Ark. App. at 7, 2021 WL at *4; (Doc. No. 9 at 5.) At trial, the State's theory of the case was that Mr. Reed robbed the Express RX Pharmacy at 6:47 p.m. on July 6, 2016.[2] (Doc. No. 10-1 at 209-210.) Mr. Reed put on an alibi defense, the owner of a tire shop, who testified that he sold Mr. Reed tires on that same date around 6:40 p.m. (*Id*. at 219-220.)

Based upon that testimony, Mr. Reed's trial counsel proffered a jury instruction that instructed the jury to accept as conclusive that the "typical route" from the tire store to the pharmacy is "12½ miles long and takes 14-18 minutes." (Doc. No. 10-1 at 280-281.) This driving time estimation was taken from a Google Maps printout. (*Id*.) The trial judge denied that proposed jury instruction, and instead instructed the jury to accept as conclusive the distance between the tire store and pharmacy, twelve and a half miles, but excluded the time it took to travel there. (*Id*. at 305.) On direct appeal, appellate counsel argued that the "circuit court judge abused his discretion in refusing to instruct the jury" with the travel time estimation, and asked the Arkansas Court of Appeals to reverse Mr. Reed's convictions. (Doc. No. 10-3 at 10.)

Appellate counsel's decision to raise that issue on direct appeal is apparent. Had the Arkansas Court of Appeals agreed with Mr. Reed and remanded the case with the directive to instruct the jury to accept as conclusive the travel time estimation, the State's entire timeline would

---

[1] In *Smith*, the Supreme Court of the United States announced that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ('Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome')."

[2] This time was based upon testimony of a law enforcement officer who observed a surveillance video showing a man running toward the pharmacy at 6:47 p.m. and running out of the pharmacy at 6:51 p.m. (*Id*.)

have been in serious dispute. According to the alibi witness, Mr. Reed was departing the tire store around 6:40 p.m. (Doc. No. 10-1 at 219-220.) The State's theory of the case put Mr. Reed running toward the pharmacy at 6:47 p.m. (*Id*. at 209-210.) And according to the jury instruction, it would have taken Mr. Reed, at a minimum, fourteen minutes to travel from the tire store to the pharmacy, making it impossible for him to have arrived by 6:47 p.m.

In addition, as Respondent points out, the Arkansas Court of Appeals acknowledged that "the law is far from settled on whether and how Google…can serve as a reservoir of adjudicative facts." *Reed*, 2020 Ark. App. at 6. The state court noted that "no consensus exists among federal or state courts on whether Google's…estimated driving times may be judicially noticed" and proceeded to mention *one* case where a court took judicial notice of an estimated driving time. *Id*. But Mr. Reed describes appellate counsel's decision to challenge the jury instruction as one that "had virtually no chance at all of success", and a sufficiency of the evidence challenge as "glaringly meritorious" and a "winning issue." (Doc. No. 9 at 4, 5, 11.)

Mr. Reed is correct that the Arkansas Court of Appeals reviewed the trial court's jury instruction decision under a deferential abuse of discretion standard. *Bynum v. State*, 2021 Ark. App. 298, at 13, 626 S.W.3d 154, at 162 (Ark. Ct. App. 2021); (Doc. No. 9 at 11.) However, I disagree with his assertion that "there is no legitimate 'strategic' or 'tactical' reason for appellate counsel to completely abandon" the sufficiency of the evidence argument. (Doc. No. 9 at 11.) For one, due to the reasons discussed above, the decision to challenge the jury instruction on appeal was a sound appellate strategy. *Collins,* 240 F.3d at 727. Mr. Reed simply cannot show that counsel's decision fell below an objective standard of reasonableness. *Id.* at 687-88.

And I agree with the Arkansas Court of Appeals that Mr. Reed has failed to show "a reasonable probability that raising a challenge to the sufficiency of the evidence would have

10

resulted in a different outcome in his direct appeal." *Reed,* 2021 Ark. App. at 11, 2021 WL at *6. In a challenge to the sufficiency of the evidence, the Arkansas Court of Appeals considers only the evidence supporting the conviction in the light most favorable to the State and determines whether the verdict is supported by substantial evidence. *Tubbs v. State*, 2007 Ark. 47, at 50, 257 S.W.3d 47, at 49. Substantial evidence is evidence that is forceful enough to compel a conclusion beyond suspicion or conjecture. *Id.* Credibility of witnesses is an issue for the jury. *Kinsey v. State*, 2016 Ark. 393, at 5, 503 S.W.3d 772, at 775.

The standard federal courts use in reviewing a claim of sufficiency of the evidence is similar to that of the state court. To prevail on a challenge to the sufficiency of the evidence, a petitioner must show that, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

The United States Court of Appeals for the Eighth Circuit specifically held that appellate counsel's choice to forego a challenge to the sufficiency of the evidence is "well within the bounds of competent appellate assistance" when there is ample evidence supporting a conviction. *Parker*, 94 F.3d at 462. So, an analysis of whether there is ample evidence to support Mr. Reed's convictions is necessary. The Arkansas Court of Appeals undertook this analysis and correctly held Mr. Reed had not shown that his appellate counsel failed to raise a meritorious issue on appeal, as substantial evidence supported the verdicts. *Reed,* 2021 Ark. App. at 11, 2021 WL at *6. In finding that substantial evidence supported the verdicts, the Arkansas Court of Appeals explained:

> Viewing the evidence in the light most favorable to the State, there is sufficient evidence from which the jury could infer Reed's guilt beyond a

reasonable to doubt to the exclusion of all other inferences. The State established that all green baskets in the pharmacy were inaccessible to nonemployees. The green baskets were kept in a restricted area behind the retail counter, and no third parties such as cleaners or customers were allowed in the secondary restricted area. The pharmacy was robbed by a white male, and Reed is a white male who substantially matches in appearance the suspect in the video - or so a juror could have reasonably concluded. The existence of another fingerprint layered on Reed's fingerprint could be explained by Vincent's clean-up efforts after the robbery. The jury could also believe Vincent's account that he had never seen the gunman before. And from this testimony, the jury could have reasonably inferred that Reed was not a pharmacy customer and therefore reject the defense's theory that perhaps Reed had visited the pharmacy previously. Under these circumstances, the jury could also have reasonably rejected Reed's (wild) hypothesis that he could have touched the green basket at an unidentified retail store more than two years before the robbery. In sum, a rational juror could have inferred from the State's proof that Reed committed the crimes.

*Id.* at 11, *5.

Mr. Reed contends that the *sole* proof the State had at trial was his partial fingerprint, overlaid with another fingerprint, found on a moveable green basket suspected to have been handled by the robber. (Doc. No. 9 at 5.) But it is evident from the state court's analysis above that although the evidence in this case was circumstantial, it is stronger than Mr. Reed's characterization. *Reed*, 2021 Ark. App. at 8, 2021 WL at *4.

A common theme throughout Mr. Reed's trial, subsequent proceedings, and his habeas petition is the emphasis on the fingerprint recovered being merely a "partial" fingerprint, suggesting it is somehow insufficient. *Reed*, 2021 Ark. App. at 5, 2021 WL at *3; (Doc. No. 10-1 at 30, 31); (Doc. No. 9 at 5, 7, 9.) At trial, the expert latent fingerprint examiner testified that "there is no such thing as a full print" because "it's impossible to record one hundred percent of ridge detail from ridged skin to non-friction ridged skin." (Doc. No. 10-1 at 160.) Moreover, the fingerprint lifted from the basket was sufficient for the examiner to confirm that it matched Mr. Reed. (*Id*. at 151.) The jury also heard her expert opinion that "no one in this world has ever seen…any two same fingerprints from two different individuals." (*Id*. at 144.) It was within the

province of the jury to weigh that testimony and conclude as they did that Mr. Reed's fingerprint was located on the green basket. *Kinsey*, 2016 Ark. at 5, 503 S.W.3d at 775.

Additionally, in support of his argument that appellate counsel was ineffective for failing to raise a sufficiency of the evidence argument on direct appeal, Mr. Reed cites several cases that address "'fingerprint-only' evidence on a highly 'moveable object.'" (Doc. No. 9 at 9-12.) He points to the Arkansas Court of Appeals' decision in *Turner v. State*, 103 Ark. App. 248, 288 S.W.3d 669 (Ark. Ct. App. 2008). (Doc. No. 9 at 12.) In *Turner*, the state court reversed a conviction for aggravated robbery because the government's entire case rested upon one fingerprint located on the exterior passenger side door of the vehicle the robber used to escape. *Id*. at 251, 672. There was no corroborating evidence, and the victims "did not testify that they observed anyone enter the truck on the passenger side." *Id*. at 250, 671. The state court found that fingerprint evidence insufficient to sustain the conviction because "there is simply no way to determine when or where appellant touched the truck…" *Id*.

Mr. Reed argues that had a sufficiency of the evidence argument been raised on direct appeal, "it is almost certain that [his] conviction would have been reversed and dismissed" based upon *Turner*. (Doc. No. 9 at 12.) But Mr. Reed's case is distinguishable from *Turner* for several reasons. First, unlike in *Turner*, we know when the fingerprint was placed on the green basket in this case. Both the surveillance footage from the pharmacy and testimony from both eyewitnesses demonstrate that the robber touched the green basket *during the commission of the crime*. (Doc. No. 10-1 at 47, 81.) Second, in Mr. Reed's case, there is additional evidence linking him to the crime. The victim of the aggravated robbery described the robber as a white male between thirty and forty years of age, standing approximately five feet eight inches tall, weighing about 200 pounds. (*Id*. at 46, 67, 80.) At the time of the robbery, Mr. Reed was 44 years old, weighed

13

approximately 180 pounds, stood five feet ten inches tall, and is a white male. (*Id*. at 4.) Mr. Reed substantially matches that description.

Lastly, Mr. Reed's explanation for his fingerprint on the basket could have reasonably been rejected by the jury. He hypothesized that "he could have touched the green basket at an unidentified retail store more than two years before the robbery", and I agree with the Arkansas Court of Appeals that the jury could have "reasonably rejected [his] (wild) hypothesis." *Reed*, 2021 Ark. App. at 11, 2021 WL at *5. Mr. Reed also points out that the state's fingerprint expert testified that she could not determine how long his fingerprint had been on the basket, suggesting that it could have remained from him touching it at an unidentified retail store two years prior. (Doc. No. 10-1 at 8.)

Both the pharmacist and pharmacy technician testified that the green baskets were used as an organizational tool, handled while fulfilling every prescription. (*Id*. at 40, 85-86.) They explained that once the technicians fill the prescriptions, they *slide* the baskets across the counter to the pharmacist. (*Id*. at 74, 86.) The jury could have reasonably concluded that it was unlikely that Mr. Reed's fingerprint could have remained after years of frequent handling. That the bottom of the basket, where Mr. Reed's fingerprint was located, was constantly being slid on a surface makes it even more likely that the fingerprint was fresh.

In addition to the Arkansas Court of Appeals' *Turner* decision, Mr. Reed points to several federal cases that touch upon fingerprint evidence. (Doc. No. 9 at 9-11.) In each of those cases, the reviewing court either granted habeas or reversed the conviction because there was no evidence that the fingerprint was planted *during the commission* of the crime. *Mikes v. Borg*, 947 F.2d 353, 361 (9th Cir. 1991); *United States v. Strayhorn*, 743 F.3d 917, 924 (4th Cir. 2014). For the reasons discussed above, that is not the case here.

14

Some federal courts seem to have adopted the following framework when deciding "fingerprint-only" evidence cases:

> In order for a reasonable jury to find a defendant guilty when the only evidence linking the defendant to the crime is a fingerprint on a highly movable item, the Government must establish that (1) the object on which the fingerprint was found was connected to the crime; and (2) the object was inaccessible to the defendant prior to the crime, such that fingerprint "could *only* have been impressed during the commission of the crime."

*United States v. Bratten*, No. TDC-17-0363, 2018 WL 3117541, at *4 (D. Md. June 25, 2018).

However, courts only undergo that analysis when the *sole* evidence linking the accused to the crime is a fingerprint. Mr. Reed's case can be distinguished, for this is not a fingerprint-only evidence case. As discussed above, because there is additional evidence linking Mr. Reed to the crime, undergoing that two-prong analysis is not necessary here.

But to be sure, both prongs are met. First, we know that the object on which the fingerprint was found, the green basket, was connected to the crime. Trial testimony from the two witnesses and surveillance video show the robber handling the green basket while robbing the pharmacy. (Doc. No. 10-1 at 51.) In fact, the green basket was *the* object the robber used to carry the stolen controlled substances until he dumped them in his shirt. (*Id*. at 48.) The first prong is met.

As for the second prong, there is ample evidence to show that the green basket was inaccessible to the defendant prior to the crime, such that Mr. Reed's fingerprint "could *only* have been impressed during the commission of the crime." *Bratten*, 2018 WL at *4. Kent Vincent, a pharmacist and co-owner of the Express RX, testified that the baskets were always kept on the secondary counter where the pharmacists filled the prescriptions. (Doc. No. 10-1 at 37, 41.) When asked if there is ever a "reason for a customer or any non-employee to be behind that counter", he responded "never." (*Id.* at 39.) He testified that the baskets do not ever leave the secondary counter, that to his knowledge, a customer has *never* touched a green basket, and the baskets are

15

never accessible to non-employees. (*Id*. at 40, 62, 65.) For example, the pharmacy does not employ a regular cleaning service who would frequent the secondary counter. (*Id*. at 64.) Katelyn Calloway, the pharmacy technician present on the night of the robbery, corroborated Mr. Vincent's testimony regarding the inaccessibility of the green baskets to non-employees. (*Id*. at 85, 86.)

I do understand Mr. Reed's argument that this is a circumstantial case. But it presents an opportunity to consider the purpose of the great writ of habeas corpus as the Eighth Circuit announced in *Berkoff*:

> The hearing on habeas corpus is not in the nature of an appeal nor is it a substitute for the functions of the trial court. This is true as to controverted issues of fact and as to disputed issues of law "whether they relate to the sufficiency of the indictment or the validity of the statute on which the charge is based. These and all other controverted matters of law and fact are for the determination of the trial court." "It is fundamental that a court upon which is conferred jurisdiction to try an offense has jurisdiction to determine whether or not that offense is charged or proved. Otherwise every judgment of conviction would be subject to collateral attack and review on habeas corpus on the ground that no offense was charged or proved."

*Berkoff v. Humphrey*, 159 F.2d 5, 7 (8th Cir. 1947).

Accordingly, as a matter of federal law, I am required to apply a deferential analysis to those claims fully adjudicated in state court, as is the case here. *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). After reviewing the decision of the Arkansas Court of Appeals, I find it is not contrary to, nor an unreasonable application of, an established federal law. Therefore, based upon the deference given to the state court, the relief Mr. Reed seeks cannot be granted.

### ii. Unreasonable Determination of the Facts

Under subsection (d)(2), a state court decision is based on an "unreasonable determination of the facts" "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003); *see also* 28 U.S.C. § 2254(e)(1) (a state court's factual finding shall

be presumed to be correct, and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence). After reviewing the decision of the Arkansas Court of Appeals, I find for the reasons discussed above that its opinion was not based on an unreasonable determination of the facts.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Reed has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

### IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Mr. Reed's § 2254 Amended Petition for Writ of Habeas Corpus (Doc. No. 9) be DISMISSED with prejudice.

2. A certificate of appealability not be issued.

DATED this 9th day of February 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE